ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| CARMEN MALDONADO SERRANO<br><br>Recurrida<br><br>v.<br><br>HOSPITAL DEL MAESTRO; DR. ALFRED VALDIVIESO; THE MEDICAL PROTECTIVE COMPANY; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCIÓN CONJUNTA DE SEGUROS DE RESPONSABILIDAD MÉDICA HOSPITALARIA; CORPORACIÓN X; SOCIEDAD PROFESIONAL X; MENGANO Y MENGANA DE TAL<br><br>Peticionaria | KLCE202400509 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV06905<br><br>Sobre: Impericia Médico Profesional y Hospitalaria; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de mayo de 2024.

Comparece el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Médico-Hospitalaria (en adelante, peticionario o SIMED) mediante un recurso de *Certiorari*, para solicitarnos la revisión de la *Resolución* emitida el 26 de marzo de 2024 y notificada al día siguiente por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI).[1] Mediante la *Resolución* recurrida, el foro primario declaró *No Ha Lugar* una solicitud de desestimación presentada por SIMED.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari*.

---

[1] Apéndice del recurso, a las págs. 44-52.

Número Identificador

RES2024_____

I

El presente caso inició el 19 de abril de 2022, cuando la señora Carmen Maldonado Serrano (en adelante, recurrida) instó una *Demanda*,[2] en el alfanumérico SJ2022CV02977, en la cual alegó impericia médico profesional y hospitalaria, y daños y perjuicios contra el Hospital del Maestro; el Dr. Alfred Valdivieso; Jane Doe y la sociedad legal compuesta por ambos; Compañía Aseguradora X; Corporación X; Sociedad Profesional X; Mengano y Mengana de Tal. Adujo que acudió a la Sala de Emergencias del Hospital del Maestro refiriendo dificultad para respirar, síntomas de COVID-19, pulmonía y que fue admitida en la Unidad de Cuidado de Intensivo para pacientes con COVID-19. Expuso que, al ser admitida, sus extremidades estaban normales, conforme al examen físico de admisión. Esbozó que, el 10 de abril de 2021, el brazo derecho comenzó a dolerle y a presentar hinchazón. Sostuvo que se quejó de que el equipo médico que tenía en el brazo le apretaba pero que no le hicieron caso. Arguyó que el dolor e hinchazón continuaba y que, el 12 de abril de 2021, se documentó que su brazo tenía un hematoma, se encontraba edematoso, duro y frío. La recurrida expuso que fue el 14 de abril de 2021, que, ante la situación, se consultó el servicio de cirugía. Alegó que, al día siguiente, se documentó que esta tenía leucocitosis y se le ordenó transfusión de sangre debido al sangrado en el área de venopunción. Alegó, además, que, en esa misma fecha, le realizaron un CT Scan el cual reveló un "extensive subcutaneous density matter of the right upper extremitiy entirely".[3]

Según se desprende de la *Demanda*, a la recurrida también se le realizó un MRI el 17 de abril de 2021, revelando "celluilitis and myositis" así como que "there is abnormal enhancement and signal

---

[2] *Id.,* a las págs. 1-5.
[3] *Id.,* a la pág. 3.

involving the flexor muscles of the forearm".[4] Luego, se consultó con el servicio de fisiatría quien dio órdenes de tratamiento. Además, expuso que, durante su estadía en el hospital, continuó sufriendo de su brazo derecho, por lo que le hicieron estudios radiológicos y transfusiones de sangre. Además, expuso que fue dada de alta el 23 de abril de 2021 y que tuvo que ser referida a Multy Medical Facilities para recibir tratamiento médico de su brazo y que no ha mejorado.

La recurrida alegó que, debido a la negligencia y el descuido del personal médico y de enfermería en el manejo de su brazo, esta sufrió un hematoma el cual presuntamente se infectó y empeoró ocasionándole úlceras, ampollas, así como grandes sufrimientos físicos y angustias mentales. A tenor, solicitó que se declara Ha Lugar la *Demanda* y que concediera una suma no menor de $100,000.00 dólares por concepto de daños y angustias mentales.

Posteriormente, el 22 de agosto de 2022, la recurrida presentó un *Aviso de Desistimiento Sin Perjuicio*.[5] Adujo que no había podido emplazar a los demandados del título y a tenor, solicitó el desistimiento sin perjuicio. En respuesta, mediante *Sentencia* emitida el 22 de agosto de 2022, notificada al día siguiente, el foro primario declaró *Ha Lugar* la solicitud, y ordenó el cierre y archivo del caso por desistimiento, sin perjuicio.[6]

Posteriormente, el 19 de julio de 2023, la recurrida presentó nuevamente una *Demanda,*[7] esta vez en el alfanumérico SJ2023CV06905, en la cual prácticamente reprodujo las mismas alegaciones de la *Demanda* instadas en el alfanumérico SJ2022CV02977. Subsiguientemente, el 10 de enero de 2024, la recurrida presentó una *Moción Solicitando Permiso para Presentar*

---

[4] *Id.,* a la pág. 3.
[5] *Id.,* a las págs. 6-7.
[6] *Id.,* a las págs. 8-9.
[7] *Id.,* a las págs. 10-15.

*Demanda Enmendada.*[8] Expuso que el propósito de la enmienda respondía a que advino en conocimiento de que The Medical Protective Company (MEDPRO) es la compañía aseguradora del codemandado Asociación Hospital del Maestro, Inc. h/n/c Hospital del Maestro y que SIMED era la compañía aseguradora del codemandado Dr. Alfred Valdivieso. Además, solicitó la eliminación de la alegación contra Jane Doe y la sociedad legal compuesta con el Dr. Alfred Valdivieso por ser este a la fecha de los alegados hechos, soltero.

Consecuentemente, el 10 de enero de 2024, la recurrida presentó una *Demanda Enmendada,*[9] esto con el fin de incluir lo alegado en la solicitud de enmienda. Mediante *Orden* notificada el 11 de enero de 2024, el foro primario autorizó la *Demanda Enmendada.*[10]

Subsiguientemente, el 14 de febrero de 2024, SIMED presentó una *Moción de Desestimación.*[11] En esencia, argumentó que el término prescriptivo aplicable a la causa de acción contra la compañía aseguradora había vencido. El fundamento de este planteamiento obedecía a que la recurrida debía interrumpir el término prescriptivo tanto de la aseguradora SIMED, como del asegurado, Dr. Alfred Valdivieso, de manera individual y esto no se hizo, por lo cual correspondía desestimar el pleito contra los peticionarios.

Por su parte, el 5 de marzo de 2024, la recurrida presentó su *Oposición a Solicitud de Desestimación Presentada por SIMED como Asegurador del Dr. Alfred Valdivieso.*[12] En esta, indicó que se había incoado la causa de acción contra SIMED dentro del término prescriptivo ya que en la *Demanda* original se desprendía de las

---

[8] *Id.,* a las págs. 16-17.
[9] *Id.,* a las págs. 18-23.
[10] *Id.,* a la pág. 24.
[11] *Id.,* a las págs. 25-33.
[12] *Id.,* a las págs. 35-43.

alegaciones que se traía al pleito a la aseguradora del Dr. Alfred Valdivieso con alegaciones específicas de negligencia y omisión, pero que fue identificado con un seudónimo por desconocerse el verdadero nombre de la aseguradora en ese momento. Esbozó que la Regla 15.4 de Procedimiento Civil, 32 LPRA Ap. V., R.15.4, regula lo concerniente al procedimiento a seguir cuando un demandante incluye a un demandado de nombre desconocido y que en el caso de autos se siguió con dicha norma.

De ahí, el 26 de marzo de 2024, notificada al día siguiente, el TPI emitió la *Resolución* recurrida.[13] En su *Resolución*, declaró *No Ha Lugar* la solicitud de desestimación presentada por SIMED y les ordenó a presentar su alegación responsiva. El foro primario concluyó que, al aplicar la teoría cognoscitiva del daño, la causa de acción contra SIMED fue presentada en término y que la parte recurrida fue diligente a la luz de las alegaciones del caso.

Inconforme con lo resuelto, el 11 de abril de 2024, SIMED presentó una *Moción de Reconsideración*,[14] mediante la cual reiteró su planteamiento en cuanto a que la causa de acción en su contra estaba prescrita. En respuesta, mediante *Orden* emitida el 11 de abril de 2024, notificada al día siguiente, el tribunal *a quo* declaró *No Ha Lugar* la solicitud de reconsideración.[15]

En desacuerdo, el 10 de mayo de 2024, compareció ante nos SIMED mediante una *Petición de Certiorari* para solicitarnos la revisión de la *Resolución* emitida el 26 de marzo de 2024 y notificada al día siguiente. En el recurso instado, SIMED esbozó la comisión de los siguientes dos (2) señalamientos de error:

> PRIMER ERROR SEÑALADO: COMETIÓ ERROR EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN DE SIMED, A PESAR DE QUE LA CAUSA DE ACCI[Ó]N DIRECTA CONTRA DICHA

---

[13] *Id.,* a las págs. 44-52.
[14] *Id.,* a las págs. 53-61.
[15] *Id.,* a las págs. 62-64.

ASEGURADORA CODEMANDADA ESTABA PRESCRITA, POR NO HABERSE INTERRUMPIDO EL TÉRMINO PRESCRIPTIVO CONTRA AQUELLA.

SEGUNDO ERROR SEÑALADO: COMETIÓ ERROR EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A DESESTIMAR AUN CUANDO LA ACUMULACIÓN DEFECTUOSA DE UN DEMANDADO *"CUYA IDENTIDAD SE DESCONOCE"* NO TUVO EFECTO INTERRUPTOR DE LA PRESCRIPCIÓN.

Mediante *Resolución* del 14 de mayo de 2024, concedimos a SIMED hasta el 20 de mayo de 2024, para acreditar el cumplimiento con la Regla 33 (A) y con la Regla 33 (B) del Reglamento de este Tribunal de Apelaciones.[16] Además, concedimos igual término a la parte recurrida para exponer su posición en torno al recurso instado.

El 15 de mayo de 2024, SIMED presentó una *Moción Acreditando Cumplimiento con la Regla 33 (A) del Reglamento del Tribunal de Apelaciones*, cumpliendo así con lo ordenado en la *Resolución* del 14 de mayo de 2024. Posteriormente, el 17 de mayo de 2024, compareció la recurrida con su *Oposición a Expedición de Auto de Certiorari*. Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

II

**A. Expedición del recurso de *Certiorari***

El *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior.[17] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[18] Conviene destacar, que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión

---

[16] 4 LPRA Ap. XXII-B, R.33(A) y (B).
[17] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[18] *Id.*, 920.

justiciera".[19] A esos efectos, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[20] Al amparo de ello, nuestro Tribunal Supremo de Puerto Rico ha manifestado, en lo pertinente, que la parte afectada por alguna orden o resolución interlocutoria en un proceso criminal, puede presentar un recurso de *Certiorari* mediante el cual apele el dictamen interlocutorio del foro primario.[21] La Regla 40 del Reglamento del Tribunal de Apelaciones[22], esboza los criterios que el tribunal deberá considerar para expedir un auto de *Certiorari*, como sigue:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### III

Tomando en consideración que nuestro ordenamiento jurídico nos confiere discreción para intervenir en aquellas determinaciones en los que el foro primario haya actuado de forma arbitraria, cuando haya cometido un craso abuso de discreción, cuando de la actuación del foro primario surja un error en la interpretación o cualquier

---

[19] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).
[20] *SLG Zapata-Rivera v. J.F. Montalvo, Id.; Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977).
[21] *Pueblo v. Román Feliciano*, 181 DPR 679, 690 (2011).
[22] 4 LPRA Ap. XXII-B, R.40.

norma procesal o de derecho sustantivo, o cuando la determinación constituya una grave injusticia, nos dimos a la tarea de evaluar la *Petición de Certiorari*, así como los documentos que acompañó. Luego de haber evaluado minuciosamente lo anterior, juzgamos que la *Petición de Certiorari* no satisface ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones como para intervenir en el mismo. Por todo lo anterior, hemos acordado abstenernos de intervenir.

Ahora bien, lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[23] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[24] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI. [25]

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de Certiorari

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] *Cacho Pérez v. Hatton Gotay,* 195 DPR 1, 12 (2016).
[24] *SLG v. Pauneto Rivera,* 130 DPR 749, 755 (1992).
[25] *Id.,* 756.